| | |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | | |
|---|---|---|
| LIBBY ROSE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:06-CV-722 |
| | § | |
| BEAUMONT INDEPENDENT SCHOOL DISTRICT, DR. CARROL THOMAS, Individually and in His Representative Capacity, ROLAND ANTOINE, Individually and in His Representative Capacity, and TOMMY FLOYD GRANGER, Individually and in His Representative Capacity, | § § § § § § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court are Plaintiff Libby Rose's Motion for Leave to Use a Fictitious Name (#2) and Defendants Beaumont Independent School District ("BISD"), Dr. Carrol Thomas ("Thomas"), Roland Antoine ("Antoine"), and Tommy Floyd Granger's ("Granger") Motion to Require Plaintiff to Use Her Real Names (#10). Plaintiff seeks to pursue the instant civil action under the fictitious name Libby Rose ("Rose") in order to protect her privacy interests. Defendants demand Plaintiff be required to use her real name, arguing that the circumstances of the instant action do not warrant an exception to the customary and constitutionally-based presumption of openness in judicial proceedings. Moreover, Defendants contend that the disclosure of Plaintiff's true identity will not prejudice Plaintiff but will facilitate the judicial administration and litigation of this case. Having reviewed the motions, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that Plaintiff should be required to use her real name in pursuing this lawsuit.

I.      Background

Born on January 6, 1987, Rose was a fourteen-year old freshman at Ozen High School ("Ozen") in Beaumont, Texas, during the 2001-2002 school term. According to Plaintiff, a sex club named the 3K[1] existed before and during Rose's time at Ozen. The alleged purpose of the 3K club was to recruit young high school girls to perform oral sex upon current and former student athletes and to have the current and former student athletes perform oral sex, among other sexual acts, on the young high school girls. In order for a high school male athlete to join the club, he supposedly was required to perform oral sex on a girl while other members watched. Rose contends that the Ozen faculty, staff, and students, as well as the general community, were aware of the 3K's existence, with some students sporting 3K tattoos on their biceps, wearing 3K clothing and jewelry, and publicizing the 3K's popularity.

From September 27, 1999, through October 31, 2004, Granger worked as an Educational Aide III in BISD. According to Rose, Granger showed her a certificate which proclaimed him to be the "Father of 3K." Granger purportedly encouraged athletes to join the 3K club and recruited Rose to provide male club members with sexual services. In her original complaint, Rose summarizes an incident in which Granger forced Rose to sit next to him as a form of punishment for a supposed act of insubordination. While sitting next to Rose, Granger allegedly wrote Rose sexually explicit notes that elicited licentious communication and solicited sexual encounters. Plaintiff contends that Granger also engaged her in numerous salacious conversations, including a series of discussions about oral sex.

---

[1] 3K allegedly stands for "Koochie Kissing Klick."

Rose further asserts that Granger arranged for Byron Bell ("Bell"), a former Ozen student and 3K member, to perform oral sex on Rose during school hours on school property. Rose contends that, later that day in the unoccupied field house, Granger and Bell touched her in a sexual manner. Rose alleges that Granger became angry with her when she left to have lunch with Bell after Granger indicated a desire to have her remain in the field house so that he could perform oral sex on her. In her original complaint, Plaintiff states that Granger facilitated other sexual liaisons between Rose and various 3K members during school hours and required her to share the details of these sexual encounters with him.

In September 2004, Rose disclosed the details of her alleged 3K experiences to a caseworker. After a report was made to Child Protective Services, local law enforcement began an investigation. On or about May 30, 2005, Rose's mother, ("Mrs. Rose"), disclosed to the acting Assistant Superintendent for Secondary Schools that a BISD employee had sexually molested Rose. Around August 23, 2005, Mrs. Rose informed the acting Director of Special Education and the Executive Director of Personnel that a BISD employee had sexually assaulted her daughter. Rose graduated from high school in 2005.

Plaintiff filed her original complaint on November 14, 2006, when she was nineteen years of age. At that time, she also separately filed her motion for leave to use the fictitious name Libby Rose. On December 19, 2006, Defendants filed their motion to require Plaintiff to use her real name. As Defendants note in their response, one of the local newspapers, *The Beaumont Examiner*, ran an article on the 3K sex club at Ozen entitled "3K Victim Speaks Out About Abuse." In this article, Rose discusses at length the details surrounding her alleged encounters with certain participants in the 3K club.

II.   Analysis

    A.   Anonymous Parties in Civil Actions

Rule 10 of the Federal Rules of Civil Procedure requires a party commencing a civil action to disclose his or her name in the complaint. *See* FED. R. CIV. P. 10(a) ("[i]n the complaint the title of the action shall include the names of all the parties . . . ."); *see also Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981); *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979). Moreover, under Rule 17 of the Federal Rules of Civil Procedure, "[e]very action shall be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a); *accord W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001). The Federal Rules of Civil Procedure do not include provisions for plaintiffs wishing to proceed anonymously. *See Wynne & Jaffe*, 599 F.2d at 712; *see also Yocom*, 257 F.3d at 1172. Under certain special circumstances, however, courts have allowed plaintiffs to conceal their true identities when pursuing a lawsuit.[2] *See Wynne & Jaffe*, 599 F.2d at 712. For instance, in a select number of cases involving matters of a sensitive and highly personal nature, such as birth control, abortion, homosexuality, and the welfare rights of illegitimate children and abandoned families, courts have allowed the normal practice of disclosing the parties' identities to yield to a policy of protecting matters of utmost privacy and intimacy. *See id.* at 712-13 (citations omitted).

---

    [2] In the Eastern District of Texas, the Local Rules provide that "[a] minor should only be identified by [her] initials, unless the minor's parent, guardian or next friend consents to the use of the minor's full name, or uses it in a document filed with the court." Local Rule CV-10(e)(2).

4

B. <u>Factors Weighed in Determination of Whether to Allow Anonymity</u>

A district court's decision to grant or deny a party's request to proceed anonymously is reviewed for an abuse of discretion. *See Frank*, 951 F.2d at 323; *Doe v. Beaumont Indep. Sch. Dist.*, 172 F.R.D. 215, 215-16 (E.D. Tex. 1997). There is no hard and fast rule for courts to follow when deciding whether to allow a party to proceed under a fictitious name. *See Stegall*, 653 F.2d at 185. Rather, the court must decide whether the considerations calling for the maintenance of a party's privacy outweigh the customary and constitutionally-based presumption of openness in judicial proceedings. *See Stegall*, 653 F.2d at 186; *see also Frank*, 951 F.2d at 323; *Beaumont Indep. Sch. Dist.*, 172 F.R.D. at 216. Factors, albeit not prerequisites, which courts have taken into consideration when determining whether to permit a plaintiff to proceed under a fictitious name include: (1) whether the plaintiff seeking anonymity is suing to challenge governmental activity; (2) whether prosecution of the suit compels the plaintiff to disclose information of the utmost intimacy; and (3) whether the plaintiff is compelled to admit her intention to engage in illegal conduct, thereby risking criminal prosecution. *See Stegall*, 653 F.2d at 185; *Wynne & Jaffe*, 599 F.2d at 712-13.

In addition to these three commonly cited factors, courts have also considered the relevant facts and circumstances of a particular case when assessing whether a plaintiff may proceed under a fictitious name. For instance, while the threat of a hostile public reaction to a lawsuit, standing alone, will rarely justify anonymity, the court may weigh potential threats of violence, in conjunction with the other factors, when deciding whether to permit a party to use a pseudonym. *See Stegall*, 653 F.2d at 186. Furthermore, courts have viewed a party's age and related vulnerability as a factor of potential significance in determining whether anonymity is appropriate.

5

*See id*. Moreover, courts have considered whether allowing a party to proceed anonymously would have any prejudicial impact on the defending parties. *See Frank*, 951 F.2d at 323-24. In light of the fact that no single factor is dispositive in this analysis, a judge should "carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Frank*, 951 F.2d at 323 (emphasis in original).

### 1. Challenge to Governmental Activity

"Whether the defendant is a governmental entity or a private defendant is significant because governmental bodies do not share the concerns about 'reputation' that private individuals have when they are publicly charged with wrongdoing." *Doe v. Shakur*, 164 F.R.D. 359, 361 n.1 (S.D.N.Y. 1996) (citing *Wynne & Jaffe*, 599 F.2d at 713). Nonetheless, while the fact that a private individual is being sued may weigh against allowing a party to proceed anonymously, the fact that the government is being sued does not necessarily weigh in favor of sanctioning the use of a pseudonym. *See Frank*, 951 F.2d at 324. In the instant action, Plaintiff is suing both the school district and individuals employed by the school district. Therefore, because Thomas, Antoine, and Granger, have valid concerns regarding the impact of this case on their individual reputations, this factor weighs against allowing anonymity.

### 2. Intimate Nature of Information

Plaintiff argues that this case involves matters of the utmost privacy and intimacy, namely sexual acts that Rose purportedly performed and salacious conversations that Rose allegedly had as a result of her involvement in the 3K sex club at Ozen. Other courts faced with a request by a victim of sexual assault seeking to pursue a civil action for monetary damages under a

pseudonym have concluded that the plaintiff was not entitled to proceed anonymously. *See Shakur*, 164 F.R.D. at 361-63 (victim of sexual assault was not allowed to prosecute civil suit for compensative and punitive damages using a pseudonym); *see also Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995) (in sexual harassment case against employer and supervisor, plaintiff who was concerned that she might have been infected with the HIV virus as result of an alleged sexual assault by her supervisor was not permitted to proceed under a pseudonym, notwithstanding fears of "intense embarrassment and shame within her community"); *Doe v. University of R.I.*, Civ. A. No. 93-0560B, 1993 WL 667341, at *3 (D.R.I. Dec. 28, 1993) (student who was sexually assaulted allegedly as result of university's negligence was not permitted to proceed under a pseudonym, despite claims of danger of personal embarrassment and ridicule). The fact that a party may suffer some personal embarrassment or humiliation, standing alone, is insufficient to justify the use of a pseudonym. *See Frank*, 951 F.2d at 324. While the court is sympathetic to Plaintiff's concerns based on the sexual nature of this case, it finds that Plaintiff has not presented a case so compelling as to permit her to proceed anonymously in light of the other relevant considerations.

3. Disclosure of Intention to Engage in Illegal Conduct

The nature of Rose's claim does not involve any admission on her part that she has personally engaged in any illegal activity or that she will violate the law in the future. Accordingly, this factor does not weigh in favor of allowing her to use a fictitious name.

4. Fundamental Fairness Considerations

As the Court of the Appeals for the Eleventh Circuit has recognized, "[i]t is the exceptional case in which a plaintiff may proceed under a fictitious name." *Frank*, 951 F.2d at 323; *see also*

*Beaumont Indep. Sch. Dist.*, 172 F.R.D. at 216. Rose, as a party in a civil case, brings this action of her own volition to vindicate her own interests. *See Javier H. v. Garcia-Botello*, 211 F.R.D. 194, 195 (W.D.N.Y. 2002) (citing *Shakur*, 164 F.R.D. at 361; *Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. at 422). Fairness usually dictates that such a plaintiff stand behind her charges publicly. *See id.* (citations omitted). "[T]he mere filing of a civil lawsuit can have significant effects on a defendant." *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 141 (S.D. Ind. 1996) (citations omitted). The public charges included in a civil lawsuit can cast a shadow over the defendants' reputation until the case is resolved, leading to adverse publicity and the forced disclosure of certain public information that the defendants might prefer to keep private. *See id.* Basic fairness often dictates that a defendant's accuser who wishes to participate in a suit as a party plaintiff must do so under her real name. *See Wynne & Jaffe*, 599 F.2d at 713. If Plaintiff was permitted to prosecute this case anonymously, the defendants would be placed at a serious disadvantage, for they would be required to defend themselves in the public arena while Rose could hurl accusations at them from behind "a cloak of anonymity." *Shakur*, 164 F.R.D. at 361; *see Javier H.*, 211 F.R.D. at 195.

Moreover, the public's interest in knowing what the judicial system is doing is frustrated when any part of litigation is conducted in secret. *See Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005). Appellate courts have noted that "[i]dentifying the parties to the proceeding is an important dimension of publicness" and that "[t]he people have a right to know who is using their courts." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997); *see Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006).

Accordingly, in the instant action, fundamental fairness demands Rose not be allowed to cast aspersions against the public school system and its educators while hiding behind a pseudonym. The allegations that Plaintiff lodges against the school district and its personnel attack the institution's ability to educate and protect the children entrusted to its care. The court finds that it is appropriate to require Plaintiff to stand publicly behind these accusations, especially in light of the fact that they are made in pursuit of monetary relief. Requiring Plaintiff to litigate this case using her real name will also permit the public to know who is using the courts to seek justice for an alleged wrong.

     5.     Other Relevant Factors

Several individuals within the school district and general community already know the true identity of Rose. Mrs. Rose spoke to the acting Assistant Superintendent for Secondary Schools and the acting Director of Special Education and the Executive Director of Personnel about Rose's allegedly being sexually assaulted on school property during school hours, so school personnel, in addition to the named Defendants, are aware of the situation. Moreover, Rose shared details of her experiences in the 3K club with a caseworker and law enforcement officials during the subsequent investigation, so these individuals are also knowledgeable about the alleged facts surrounding this case. Finally, the other members of the 3K club presumably know Rose's identity based on her participation in the organization. While Plaintiff may be concerned that using her real name will allow strangers access to the intimate details of her associations with the 3K club, the court finds such considerations are entitled to less deference in light of Rose's involvement in the media coverage of this topic. *See* Jerry Jordan, "3K Victim Speaks Out About Abuse," *The Beaumont Examiner*, Oct. 27–Nov.2, 2006, at 7A, 8A. By participating in an

9

interview as part of the local newspaper's article on the Ozen sex club scandal, Rose helped promote media coverage of the events. *See id*. After agreeing to tell her side of the story from behind the cloak of anonymity, she cannot now complain to the court about the potential for future coverage. *See id*. at 7A.

As for possible threats of violence, Rose has not indicated that she has a fear of retaliation for initiating this lawsuit. The reality, though, is that any retaliation is more likely to come from the defendants who already know her identity than from the community at large, and, therefore, fear of reprisals does not provide a basis for anonymity in this instance. *See Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. at 420-21; *see also Shakur*, 164 F.R.D. at 362.

Courts have taken into consideration the age and related vulnerability of a party in determining whether the use of a fictitious name is appropriate. As Defendants note in their response, Rose, while a minor at the time of the incidents at issue in the case at bar, is no longer a minor. *See Stegall*, 653 F.2d at 186. Rather, she graduated from high school in 2005 and was nineteen years old at the time she filed her original complaint. Thus, the concern that courts display for children of a tender age and their vulnerable status does not currently apply to Rose.

Finally, this court questions the wisdom of allowing a party to pursue a civil action using a fictitious name rather than the individual's initials or the traditional designations of John Doe and Jane Doe. As the Court of Appeals for the Ninth Circuit aptly recognized, "[i]t is preferable for lawyers and courts to avoid harm to the reputations of real persons by using these traditional references for pseudonyms." *Doe I v. Burton*, No. 94-35734, 1996 WL 252825, at *1 n.1 (9th Cir. May 13, 1996).

III. Conclusion

Having carefully weighed all the circumstances of this particular case, the court concludes that the considerations calling for maintenance of a party's privacy do not outweigh the customary and constitutionally-based presumption of openness in judicial proceedings. Therefore, Plaintiff's Motion for Leave to Use a Fictitious Name is denied, and Defendants' Motion to Require Plaintiff to Use Her Real Names is granted.

Plaintiff is hereby directed to amend her complaint to reflect her true identity and that of her mother and to serve copies of the First Amended Complaint on Defendants by February 2, 2007. *See Indiana Black Expo, Inc.*, 923 F. Supp. at 143. In the event that Plaintiff fails to amend her complaint to reflect her true identity, she risks dismissal of the action because Plaintiff's original complaint, which uses a fictitious name, fails to comply with Rule 10(a) of the Federal Rules of Civil Procedure. *See id*.

SIGNED at Beaumont, Texas, this 23rd day of January, 2007.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE