IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| TIFFANY SPILLER | § | |
|     *Plaintiff* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 1:06-CV-722 |
| | § | |
| BEAUMONT INDEPENDENT SCHOOL | § | JUDGE MARCIA A. CRONE |
| DISTRICT, DR. CARROL THOMAS, | § | |
| individually and in his representative capacity, | § | |
| ROLAND ANTOINE, individually and | § | |
| in his representative capacity, AND | § | |
| TOMMY FLOYD GRANGER, | § | |
| individually and in his representative capacity | § | |
|     *Defendants* | § | |

---

# DEFENDANTS BEAUMONT INDEPENDENT SCHOOL DISTRICT, DR. CARROL THOMAS, AND ROLAND ANTOINE'S MOTION FOR SUMMARY JUDGMENT

---

Melody G.Chappell
Attorney-in-Charge
Texas State Bar No. 00785096
Nancy Y. Hart
Texas State Bar No.24012795

WELLS, PEYTON, GREENBERG
  & HUNT, L.L.P.
P.O. Box 3708
Beaumont, Texas 77704-3708
Tel. (409) 838-2644
Fax: (409) 838-4713

ATTORNEY FOR DEFENDANTS BEAUMONT INDEPENDENT SCHOOL DISTRICT, DR. CARROL THOMAS, AND ROLAND ANTOINE

# TABLE OF CONTENTS

                                                                                  Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.  Uncontroverted Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.  Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     A.  The Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     B.  Plaintiff's state law tort claims against Thomas and Antoine are barred . . . . . . . . . . 8
         by professional immunity

     C.  Spiller cannot establish that Dr. Thomas and Antoine, in their individual . . . . . . . . . 9
         capacities, violated her substantive or procedural  due process rights under
         42 U.S.C. Section 1983

     D.  Spiller cannot establish that BISD violated her substantive or procedural . . . . . . . . . 11
         due process rights under U.S.C. Section 1983

     E.  Spiller's Section 1983 claim against Superintendent Carrol Thomas and . . . . . . . . . . 22
         former Ozen High School Principal Roland Antoine in their  official
         capacities cannot be maintained

     F.  Title IX Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         1.  There is no evidence that BISD had actual notice of  the alleged sexual . . . . . . . 24
             abuse incident until Spiller was no longer a student

IV.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

Cases                                         Page

*Albright v. Oliver*, 510 U.S. 266 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40 (1999) . . . . . . . . . . . . . . . . . 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505,
    91 L.Ed.2d 202 (1986)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566 (5th Cir. 2003) . . . . . . . . . . . . . 7

*Augustine v. Doe*, 740 F.2d 322 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Baker v. McCollan*, 443 U.S. 137 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Baton Rouge Oil & Chemical Workers Union v. ExxonMobil Corp.*
    289 F.3d 373 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bennett v. City of Slidell,* 735 F.2d 861 (5th Cir. 1984), *cert. denied*,
    472 U.S. 1016 (1985)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Bennett v. Pippin*, 74 F.3d 578 (5th Cir.), *cert. denied*, 519 U.S. 817, (1996) . . . . . . . 14

*Bd of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997) . . . . . . . . . . 14

*Bourdezux v. Swift Transp. Co., Inc.,* 402 F.3d 536 (5th Cir. 2005) . . . . . . . . . . . . . . 7

*Brittany B. v. Martinez*, 494 F.Supp.2d 534 (W.D. Tex. 2007) . . . . . . . . . . . . . . . . 14, 16, 22

*Cabillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) . . . . . . . . . . 8

*Celotex Corp. v. Catreet*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) . . . . 6, 8

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) . . . . . . . . . . . . . . . . . . . . . . 14

*Conn v. Gabbert*, 526 U.S. 286, 290 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Davis v. Monore County Bd. of Educ.*, 526 U.S. 629, 119 S.Ct. 1661,
    143 L.Ed. 2d 839 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Delgado v. Stegall*, 367 F.3d 668 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Doe on Behalf of Doe v. Dallas Independent School Dist.*,
153 F.3d 211 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380 (5th Cir. 2000),
cert. denied. (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Doe v. Lago Vista Indep. Sch. Dist.*, 106 F.3d 1223 (5th Cir. 1997) . . . . . . . . . . . . 23

*Doe v. Rains County Indep,. Sch. Dist.*, 66 F.3d 1402 (5th Cir. 1995)) . . . . . . . . . . . 14

*Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir. 1994) . . . . . . . . . . 10

*Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299 (5th Cir. 1995) . . . . . . . . . . . . . . . . . 16

*Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 12, 22

*Farmer v. Brennan*, 511 U.S. 825 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 24

*Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Franklin v. Gwinnett County Public Sch.*, 503 U.S. 60 (1992) . . . . . . . . . . . . . . . . . 23

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 118 S.Ct. 1989,
141 L.Ed.2d 277 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Jackson v. City of Atlanta*, 73 F.3d 60 (5th Cir.), *cert. denied*, 519 U.S. 818 (1996) . 11

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 21

*Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*,
379 F.3d 293 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. Moore*, 958 F.2d 92 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kentucky v. Graham*, 4713 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) . . 22

*Languirand v. Hayden*, 717 F.2d 220 (5th Cir. 1983), *cert. denied*,
467 U.S. 1215 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 8

*Love v. Nat'l Med. Ctr.*, 230 F.3d 765 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 7

iv

*Migra v. Warren City School Dist. Board of Educ.*, 465 U.S. 75 (1984) . . . . . . . . . 11

*Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . 13, 15

*Murphy v. Kellar,* 950 F.2d 290 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nash v. Electrospace System, Inc.*, 9 F.3d 401 (5th Cir. 1993)) . . . . . . . . . . . . . . . . 23

*Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507 (5th Cir. 2001) . . 7

*Pegram v. Honeywell, Inc.*, 361 F.3d 272 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 7

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1 (1981) . . . . . . . . . . . 23

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.) cert denied,
        534 U.S. 820 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Rivera v. Houston Independent School District*, 349 F.3d 244 (5th Cir. 2003) . . . . . 14, 15

*Rosa H. v. San Elizario Indep. Sch. Distr.*, 106 F.3d 648 (5th Cir. 1997) . . . . . . . . . 23, 24

*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) *cert. granted,*
        525 U.S. 1098, *cert. dismissed*, 526 U.S. 1083 (1999).) . . . . . . . . . . . . . . . . 12

*Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254 (5th Cir. 2002) . . . . . . . . . . 6

*Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland,*
        101 F.3d 1095 (5th Cir. 1996), cert. denied, 521 U.S. 112 (1997) . . . . . . . . . 11

*Thomas v. Sams*, 734 F.2d 185, 190-191 (5th Cir. 1984), cert. denied,
        472 U.S. 1017 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Weeks Marine, Inc. v. Fireman's Fund Ins. Co.,* 340 F.3d 233 (5th Cir. 2003) . . . . . . 7

*Young v. City of Killeen*, 775 F.2d 1349 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . 11

## Texas Cases

*Barr v. Bernhard*, 562 S.W.2d 844 (Tex. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hopkins v. Spring*, 736 S.W.2d 617 (Tex. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## Statutes

Federal Rule of Procedure 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4 (footnote)

Federal Rule of Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Texas Education Code Section 22.051 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

Texas Education Code Section 11.151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

20 U.S.C. Section 1681 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 22, 23, 24

42 U.S.C. Section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 9, 11, 12, 14, 21, 22

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| TIFFANY SPILLER | § | |
| *Plaintiff* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 1:06-CV-722 |
| | § | |
| BEAUMONT INDEPENDENT SCHOOL | § | JUDGE MARCIA A. CRONE |
| DISTRICT, DR. CARROL THOMAS, | § | |
| individually and in his representative capacity, | § | |
| ROLAND ANTOINE, individually and | § | |
| in his representative capacity, AND | § | |
| TOMMY FLOYD GRANGER, | § | |
| individually and in his representative capacity | § | |
| *Defendants* | § | |

<u>DEFENDANTS' BEAUMONT INDEPENDENT SCHOOL DISTRICT, DR. CARROL
THOMAS, AND ROLAND ANTOINE'S MOTION FOR SUMMARY JUDGMENT</u>

TO THE HONORABLE COURT:

Defendants Beaumont Independent School District, Dr. Carrol Thomas, and Roland
Antoine file their Motion for Summary Judgment, and would respectfully show the following:

## I. INTRODUCTION

**A.____Uncontested Facts**

1.     Plaintiff is Tiffany Spiller ("Spiller"); Defendants are Beaumont Independent School
District ("BISD"), Dr. Carrol Thomas ("Dr. Thomas"), Roland Antoine ("Antoine"), and Tommy
Floyd Granger ("Granger").

2.     On November 14, 2006, Plaintiff Tiffany Spiller sued defendants to vindicate her civil
rights under 42 U.S.C. Section 1983, 20 U.S.C. Sections 1681-1687 (Title IX, Education
Amendments of 1972), for their alleged violations of her (1) constitutional right to bodily integrity,
(2) their negligence, negligent hiring, negligent supervision, negligent training, negligent retention,

intential infliction of emotional distress, assault, battery, false imprisonment, sexual assault (all state tort law claims) (3) sexual harassment, and (4) sex discrimination of Spiller. Spiller filed a First Amended Complaint and Jury Demand on January 29, 2007.

3. On December 19, 2006, Defendants BISD, Dr. Thomas, Antoine, and Granger filed their Answer to Plaintiff's Original Complaint. On February 22, 2008, Defendants BISD, Dr. Thomas, Antoine, and Granger filed their Answer to Plaintiff's First Amended Complaint.

4. This suit arises from allegations of sexual abuse brought by Tiffany Spiller ("Spiller") or "Plaintiff") against Tommy Floyd Granger ("Granger") who was hired by BISD to supervise in school suspension ("SAC") at Ozen High School, a BISD high school.

5. At all times material hereto, Dr. Carrol Thomas ("Thomas") was the Superintendent of BISD. Roland Antoine, former principal at Ozen High School, was principal during the 2001-2002 school year through April 2004. *[Exhibit B]*

6. Spiller began her Ozen High School studies the second six weeks of 2001. Spiller was frequently assigned to SAC (in school suspension) for frequent fighting, classroom disruption, refusing to follow instructions, leaving class without permission, and disrespectful behavior. *Id.*

7. One day during December of 2001, Spiller was assigned to SAC. Granger was the supervisor for SAC. Spiller alleges that Granger had inappropriate sexual contact with her. Spiller did not report the alleged incident to any teacher or administrative employee at Ozen High School or BISD.

8. On October 23, 2003, Spiller assaulted a teacher. Spiller was expelled from Ozen High School. Spiller spent the rest of her junior year at a juvenile correctional facility ("boot camp"). *Id.*

9.      Sometime towards the end of the 2002-2003 school year, Spiller was convicted of assault and sentenced to a year at a Texas Youth Commission juvenile corrections facility ("TYC"). Spiller spent her senior year (2004-2005 school year) at TYC juvenile corrections facilities located in Brownwood, Texas and Fort Worth, Texas. *Id.*

10.      Spiller did not report the alleged sexual assault incident until September 2004 while she was at the TYC juvenile corrections facility. In September 2004, Spiller told her caseworker and her mother about the alleged incident. The alleged incident was reported to the Texas Department of Family and Protective Services. *[Exhibit A]*

11.      On February 7, 2005, the Texas Department of Family and Protective Services informed Spiller's mother that the report was investigated and there was not sufficient information to determine the abuse occurred. On February 24, 2005, the Texas Department of Family and Protective Services informed Granger that the alleged abuse had been investigated and there was not sufficient information to determine the abuse occurred. *[Exhibits F & G]*

12.      Spiller attended summer school at Ozen High School the summer of 2005. Spiller subsequently graduated. *[Exhibit B]*

13.      Granger was not working at Ozen High School during the summer of 2005. *[Exhibit L]*

14.      Roland Antoine was no longer principal at Ozen High School when Spiller first reported Granger's alleged sexual assault to her caseworker. *[Exhibit B]*

15.      Apparently, there was a police investigation of the alleged incident between Granger and Spiller. However, BISD was never informed about any police investigation. *[Exhibit C, Affidavit of Dr. Carrol Thomas, paragraph, 4]*.

16.     On August 11, 2006, Granger was indicted for Indecency with a Child.  That  same

day, BISD suspended Granger from his employment with BISD. *[Exhibit D, Letter from Dr. Carrol*

*Thomas to Granger]*.  On August 1, 2007, Granger was acquitted of charges of indecency with a

child.  *[Exhibits D & G]*

**B.      Statement of Issues to Be Decided by the Court**

1.     Are Thomas and Antoine  entitled to professional immunity under the Texas Education
Code?

2.     Can Spiller establish that  Thomas and Antoine, in their individual capacities,  violated her
substantive or procedural due process rights under 42 U.S.C. 1983?

3.     Can Spiller establish that BISD violated her substantive or procedural due process rights
under 42 U.S.C. Section 1983.

4.     Should Spiller's Title IX claims against BISD  be dismissed as a matter of law.

## II.  SUMMARY OF THE ARGUMENT

As stated above, Plaintiff Spiller sued BISD, Thomas, and Antoine for state tort law claims

of negligence, negligent hiring, negligent supervision, negligent training, negligent retention,

intentional infliction of emotional distress.   Spiller's state tort law claims are barred by the

professional immunity found in Texas Education Code Section 22.051.  The Texas Supreme Court

interprets this provision to provide an exception to immunity only in cases where bodily injury results

from the administration of student discipline.  Spiller's alleged injuries did not result from an act of

discipline by either Thomas or Antoine. [1]

Spiller also sued BISD, Thomas and Antoine, in their individual capacities, claiming they

violated her substantive or procedural due process rights under 42 U.S.C. Section 1983.  Thomas and

---

[1]Defendants BISD, Thomas and Antoine filed a Motion to Dismiss pursuant to Federal Rule of Procedure 12(b)(6).  This
motion was filed on October 13, 2008 and concerns claims not addressed in this motion for summary judgment.

Antoine did not learn of the alleged sexual abuse until Granger was indicted in August 2006. This was well after Plaintiff was a BISD student. Spiller cannot establish that Thomas and Antoine learned of facts or a patter of inappropriate sexual behavior by Granger pointing plainly toward the conclusion that Granger was sexually abusing Spiller. Thomas and Antoine could not take action to prevent or stop abuse of which they had no knowledge. Therefore, Thomas and Antoine did not cause a constitutional injury to Spiller.

Spiller alleges that BISD violated her substantive or procedural due process rights under U.S.C. Section 1983. In order for a governmental entity or official to be held liable under section 1983, the discrimination in question must result from an official policy or custom. BISD's officially adopted policy 4040 addresses sexual harassment. The content of Policy 4040 shows a genuine concern for the constitutional rights of the students of BISD. There is no evidence that BISD's officially adopted policy was the moving force of an alleged violation of Spiller's constitutionally protected rights. Further, there is no evidence that there was a persistent, widespread practice of BISD officials or employees, which, although not authorized by officially adopted and promulgated policy, was so common and well settled as to constitute a custom that fairly represents district policy.

Spiller also sued Thomas and Antoine in their official capacities under Section 1983. Suing a government official in his or her official capacity is another way of pleading against the entity of which the official is an agent. In other words, an official capacity suit is to be treated as a suit against the entity. Therefore, the Court should dismiss the claims against Thomas and Antoine in their official capacities because the section 1983 claims against them are redundant of the section 1983 claim against the district.

Finally, Spiller sued BISD for the sexual abuse under Title IX.  School districts are required to have actual knowledge of the specific sexual abuse before liability under Title IX will apply. BISD did not have actual notice of the specific sexual abuse.   In the alternative, even if it is determined that BISD had actual knowledge of the specific sexual abuse, there was a good faith response to Spiller's allegations.  The deliberate indifference standard is a high one.  The 5th Circuit has said that good faith but ineffective responses might satisfy a school official's obligation in these situations.  In this case, Spiller  alleges her mother told a BISD official shortly before she started summer school.  The BISD official allegedly said Granger would not be on the campus.  Granger was not on the campus and Spiller graduated that summer.  After graduation there would be no further contact with Granger as Spiller was no longer a BISD student.

## III.  ARGUMENT

### A.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  See FED. R. Civ. P. 56.  Under FED.R.CIV.P. 56c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catreet*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Stahl v. Novartis Pharmaceuticals Corp*., 283 F.3d 254, 263 (5th Cir. 2002).  If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate the evidence in the record insufficiently supports an essential element or claim.  *Celotex*, 477 U.S.

at 330. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdezux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)(*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chemical Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56 c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003).

Affidavits supporting or opposing summary judgment must "set forth facts that would be admissible in evidence." FED.R.CIV.P. 56(e); *see Love v. Nat'l Med. Ctr.*, 230 F.3d 765, 776 (5th Cir. 2000). "Statements constituting hearsay are not competent summary judgment evidence." *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 510 (5th Cir. 2001)(*citing Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995)). Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Cabillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002). "wdRule 56 'mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(quoting *Celotex*, 477 U.S. at 322).

**B.      Plaintiff's state law tort claims against Thomas and Antoine are barred by professional immunity.**

Spiller's state law tort claims against Thomas and Antoine are barred by the professional immunity found in Texas Education Code Section 22.051. The Education Code provides professional school district employees such as Thomas and Antoine with immunity from state law tort claims under the following provision:

> A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students. TEX. EDUC. CODE Section 22.051.

The Texas Supreme Court interprets this provision to provide an exception to immunity only in cases where bodily injury results from the administration of student discipline. *See Hopkins v. Spring.*, 736 S.W.2d 617, 618-619 (Tex. 1987); *Barr v. Bernhard*, 562 S.W.2d 844, 848 (Tex. 1978). Moreover, the Texas Supreme Court recognizes that "[d]iscipline' in the school context ordinarily describes some form of punishment." *Hopkins*, 736 S.W.2d at 619.

Spiller is unable to show any evidence that Thomas and/or Antoine even knew about the alleged sexual assault incident or that her alleged injuries resulted from an act of discipline by Thomas or Antoine. Thomas and Antoine are entitled to professional immunity from Spiller's state law tort claims. Therefore, and summary judgment should be granted in favor of Thomas and Antoine as a matter of law.

**C.** **Spiller cannot establish that Dr. Thomas and Antoine, in their individual capacities, violated her substantive or procedural due process rights under 42 U.S.C. Section 1983.**

Plaintiff Spiller admits that she never reported Granger's alleged conduct to Thomas or Roland Antoine. *[Exhibit A, Transcript of Spiller's Oral Deposition, p. 167-168]*. Plaintiff admits that she never reported Granger's alleged conduct to any other teachers or administrators at Ozen or BISD. *[Exhibit A, Transcript of Spiller's Oral Deposition, p. 168]* The first time Spiller ever admits she told anyone adult about Granger's alleged conduct was when she told her TYC caseworker in September 2004. *[Exhibit A, Transcript of Spiller's Oral Deposition, p. 109]* [2] Further, Roland Antoine was no longer the principal at Ozen High School when Spiller first reported her allegation to her caseworker. Antoine was transferred to a position within the BISD administration on April 2004. This was at least 4 months before Spiller ever reported her allegations. *[Exhibit B, Affidavit of Roland Antoine, paragraph 3]* [3] Thomas and Antoine did not learn of Spiller's allegations until Granger was indicted in August 2006. *[See Exhibit C, Affidavit of Dr. Thomas, paragraph 3 and*

---

[2] CPS did an investigation and found there was not enough information to determine that Spiller had been abused by Granger. [Exhibits F and G, CPS letters]

[3] Spiller was expelled from Ozen High School for assaulting a teacher. She attended boot camp for the second half of her junior year of high school. At the end of her junior year, she was convicted for assaulting a teacher and was ordered to a Texas Youth Correction facility for a year. Spiller did not return to Ozen High School except for a 2005 summer school session. [Exhibit B, Affidavit of Roland Antoine, paragraphs 8-11.]

*Exhibit C, paragraph 4]*.  This was more than a year after Spiller had graduated from high school.  After Granger's indictment, Granger was suspended and subsequently terminated from his employment.[4] *[Exhibits D & E, Letters from Dr. Thomas to Granger]*.

"A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that: (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student."  *Doe v. Taylor Independent School District*, 15 F.3d 443, 454 (5th Cir. 1994).

Spiller cannot establish that Thomas and Antoine learned of facts or a pattern of inappropriate sexual behavior by Granger pointing plainly toward the conclusion that Granger was sexually abusing Spiller.  Thomas and Antoine could not take action to prevent or stop abuse of which they had no knowledge.  Therefore, Thomas and Antoine did not cause a constitutional injury to Spiller.

Spiller also argues that the alleged sexual abuse to which Granger allegedly subjected her constituted sexual harassment and gender discrimination. [Plaintiff's Amended Complaint, paragraph 61].  Spiller is unable to show how Thomas and Antoine could be supervisorily liable for equal protection violations predicated on Granger's alleged sexual abuse when she is unable to show they

---

[4]On August 1, 2007, Granger was acquitted on indecency with a child charges.  Judge Wayne Walker of the 252nd State District Court told Granger there "was nowhere close to enough evidence to convict you of this offense." [See Exhibit H, Associated Press article.]

are supervisorily liable for substantive due process violations (bodily integrity) involving the same conduct.

There is absolutely no evidence of any violations of Spiller's rights under Section 1983. Accordingly, Thomas and Antoine are entitled to judgment as a matter of law.

**D.      Spiller cannot establish that BISD violated her substantive or procedural due process rights under U.S.C Section 1983.**

The Civil Rights Act of 1871, 42. U.S.C. Section 1983, creates a private cause of action for redressing the violation of federal law by those acting under color of state law.  See *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Migra v. Warren City School Dist. Board of Educ.*, 465 U.S. 75, 82 (1984); *Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir. 1996), cert. Denied, 521 U.S. 112, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997).  It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .
> 42 U.S.C. Section 1983.

"Section 1983" is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994)(quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818 (1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).

To prevail on a section 1983 claim, Spiller must prove that a person acting under the color of state law deprived her of a right secured by the Constitution or laws of the United States.  *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Augustine v. Doe*, 740 F.2d 322, 324-25 (5th Cir. 1984).  A section 1983 complainant must support her claim with specific facts

demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. See *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

Thus, for Spiller to recover, she must show that Defendants deprived her of a right guaranteed by the Constitution or the laws of the United States. *Thomas v. Sams*, 734 F.2d 185, 190-191 (5th Cir. 1984), cert. denied, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). Spiller must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference - - not the result of mere negligence. See *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994). Moreover, to hold a defendant liable under Section 1983, Spiller must adduce facts demonstrating the defendants' participation in the alleged wrong. See *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992).

In order for a governmental entity or official to be held liable under section 1983, the discrimination in question must result from an official policy or custom. See *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989); *Evans v. City of Houston*, 246 F.3d 344, 357-58 (5th Cir. 2001). For section 1983 liability to attach, Spiller must demonstrate three elements "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.), cert denied, 534 U.S. 820 (2001). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998), *cert. granted*, 525 U.S. 1098, *cert. dismissed*, 526 U.S. 1083 (1999).) Moreover, when proceeding under Section 1983, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." *Id.* at 579.

The United States Supreme Court has expressly held that local governmental entities may be sued directly under section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978); see *Languirand v. Hayden*, 717 F.2d 220, 223 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984). A municipality may also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell*, 436 U.S. at 690-91; see also *Languirand*, 717 F.2d at 223. The Fifth Circuit has defined official policy or custom as:

1.    A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.    A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)(quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985)).

The first type of "policy" is characterized by formal rules and understandings which constitute fixed plans of action to be followed under similar circumstances consistently and over time. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). The second type of "policy" arises

from custom, i.e., "conduct that has become a traditional way of carrying out policy and has acquired the force of law." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

Proof of a responsible policymaker is a necessary element for the imposition of municipal liability under section 1983. See *Piotrowski*, 237 F.3d at 579 (citing *Jett,* 491 U.S. at 737; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988). State law determines whether a particular individual is a final policymaker of a governmental entity with respect to a certain sphere of activity. *See Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.), *cert. denied*, 519 U.S. 817, (1996)(citing *Jett*, 491 U.S. at 737; *Praprotnik*, 485 U.S. at 124; *Doe v. Rains County Indep,. Sch. Dist.*, 66 F.3d 1402, 1407 (5th Cir. 1995)). Under Texas law, the Board of Trustees, not the Board in combination with any subordinate school district officials (i.e. teachers, principals, and superintendents), is the "official policymaker" for purposes of section 1983 liability. *Rivera v. Houston Independent School District*, 349 F.3d 244, 247-48 (5th Cir. 2003); *Brittany B. v. Martinez*, 494 F.Supp.2d 534, 541 (W.D. Tex. 2007). Although teachers, principals, and superintendents might have "decision-making authority" under the Texas Education Code, they do not have "the policymaking authority required to sustain liability under Section 1983. *Rivera* at 248.

The policy maker must have final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Municipal liability cannot be sustained under a theory of respondeat superior. *Bd. Of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Piotrowski,* 237 F.3d at 578. "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578. Therefore to sustain liability under Section 1983, Spiller must point to more than the actions of a BISD employee, she

must identify a policymaker with final policymaking authority and a policy that is the "moving force" behind the alleged constitutional violation. *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).

Beginning in 1993, BISD promulgated a policy prohibiting sexual harassment of students. *[Exhibit I, BISD Policy 4040]* Policy 4040 lists several types of contact or treatment that are considered harassment by BISD. These include "[R]epeated unwelcome flirtation, advances, propositions" and "[O]ffensive or inappropriate touching. The policy states that any BISD employee will be subject to disciplinary action for violating the policy, and that disciplinary action can include non-renewal or termination. *[Exhibit I, BISD Policy 4040]*. The evidence shows that Policy 4040 specifically threatens those who engage in sexual abuse with a range of punishments to be determined by the Board. The content of Policy 4040 shows a genuine concern for the constitutional rights of the students of BISD, not deliberate indifference. Thus, there is no evidence that BISD's officially adopted policy was the moving force of an alleged violation of Spiller's constitutionally protected rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1974).

Further, there is no evidence that there was a persistent, widespread practice of BISD officials or employees, which, although not authorized by officially adopted and promulgated policy, was so common and well settled as to constitute a custom that fairly represents district policy. The Board of Trustees is the one and only policymaker for BISD, and the Board has not delegated any policymaking authority to subordinate school district personnel. Tex. Educ. Code Section 11.151(b) Any delegation of decision-making authority to the principal or superintendent does not negate the fact that both under Texas law, and the Board's own policies, final policymaking authority lies exclusively with the Board. *[See Exhibit J, Board Policy]* The Fifth Circuit has stated that although

15

Texas law provides that the principal is to exercise decision-making authority in certain areas, even in those areas the principal must follow the guidelines and policies established by the school district. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995). Thus, Spiller cannot impute the actions of teachers, principals, and superintendents to the District for purposes of section 1983 liability. *See Brittany B. v. Martinez*, 494 F.Supp.2d 534, 541 (W.D. Tex. 2007).

Spiller made the following factual allegations in her Amended Complaint:

(1) **Spiller's Allegation:** It was well-known by the faculty and staff that the 3K- Koochie Kissing Klick existed and that young high school girls were recruited to perform oral sex upon or to have oral sex performed on them (among other sexual activities) by current and former student athletes. [Amended Complaint p. 3, paragraph 12.]

**BISD's Response:** Spiller is unable to provide any evidence that it was well-known by the faculty and staff that the 3K - Koochie Kissing Klick was an alleged sex ring. *[See Exhibit C, Affidavit of Dr. Carrol Thomas, paragraph 5; Exhibit B, Affidavit of Roland Antoine, paragraph 5]*

(2) **Spiller's Allegation:** At the time of Granger's deplorable conduct with Spiller, improper relationships between teachers and students was epidemic. [Amended Complaint, p. 5 paragraph 22.]

**BISD's Response:** Spiller is unable to provide any evidence that improper relationships between teachers and students was epidemic. In Spiller's deposition, Spiller testified that she heard about relationships from her friends. The best Spiller could provide was that her friend Whitney Guillory was "talking" to a substitute teacher and that her friend Isis "was talking to like Mr.[ R]. and a [substitute teacher]." *[See Exhibit A, Oral Deposition of*

*Spiller, p. 152, lines 21-24.]* Former Ozen band director Ferguson Parker was convicted for his sexual conduct with a student. However, BISD followed proper procedures and suspended Mr. Parker. *[See Exhibit B, Affidavit of Roland Antoine, paragraph 18.]*

(3) **Spiller's Allegation:** In some situations, when students complained of sexual misconduct involving their teachers, they were made by BISD staff members to recant their stories to say they were lying to cover up the employee wrong-doing. [Amended Complaint, p. 5, paragraph 22]

    **BISD's Response**: Spiller exaggerates this claim. In Spiller's oral deposition, she testified that she spoke with one girl, that claimed she had been inappropriately touched. Spiller alleges that Granger spoke to the girl and that "Granger told [the girl] to not get that man in trouble because he a married man and this and that and this and that." *[Exhibit A, Oral Deposition of Tiffany Spiller, p. 130, lines 8-13]* However, BISD appropriately responded to the girl's allegations. Principal Antoine had the assistant principal investigate an allegation of an inappropriate act between a student and a coach. It was determined that there was no inappropriate act. The coach was warned about behavior around high school student and that playful conduct can be misconstrued by high school students. *[Exhibit B, Affidavit of Roland Antoine, paragraph 17]*.

(4) **Spiller's Allegation:** A female teacher was allowed to resign rather than being promptly terminated when she became pregnant with a student's child. [Amended Complaint, p. 5, paragraph 22]

    **BISD's Response:** It was brought to Roland Antoine's attention that someone had seen a teacher and a student hugging and kissing. The teacher was informed this behavior was

17

inappropriate and she resigned. *[Exhibit B, Affidavit of Roland Antoine, paragraph 15]* Spiller's allegation actually shows BISD appropriately responded to the complaint by speaking with the teacher and the teacher's subsequent resignation.

(5)     **Spiller's Allegation:**  Teachers went to parties with students where they commonly drank alcohol and smoked marijuana with them. [Amended Complaint, p. 5, paragraph 22]

**BISD's Response:** Spiller testified that there was only one teacher, Ferguson Parker that attended parties with students and drank alcohol and smoked marijuana with students.[5] *[See Exhibit A, Oral Deposition of Spiller, p. 158]* Therefore, there was **one** teacher and not multiple teachers.  When Roland Antoine was notified that there was inappropriate behavior, Roland Antoine followed procedures. *[Exhibit B, paragraph 18]*

(6)     **Spiller's Allegation:**  Various teachers - male and female - are well known for their sexual activity with their students. [Amended Complaint, p. 5, paragraph 22]

**BISD's Response:** Spiller has no credible evidence to support this allegation. Even if true, Spiller has no evidence that BISD knew about the various teachers and their sexual activity with their students.

(7)     **Spiller's Allegation:**  BISD allowed known sex offenders access to students [Amended Complaint, p. 6, paragraph 26]

**BISD's Response:** The sex offender that Spiller is talking about was a volunteer with the football team. The sex offender's brother was an Ozen football player.  At a Friday night football game a parent informed Antoine that this volunteer was a registered sex offender. On the following Monday, Antoine reviewed the registered sex offender sheets and found

---

[5]Ferguson Parker's employment was terminated at the time of the allegations.

18

the man's name. Antoine spoke to the coach and made him aware of the volunteer's registered sex offender status. Antoine spoke to the volunteer and told him that he could not be on school property or be around the students. Antoine also informed the coaches of the volunteer's sex offender status and told them to le Antoine know if the man ever came back because Antoine would have him arrested. One day, Antoine heard the man was in the gym. Antoine had police officers remove the man from the campus and the man was arrested. *[Exhibit B, paragraph 20]*.

(8) **Spiller's Allegation:** Roland Antoine, principal during Granger's alleged conduct involving Spiller, was having at least one extra-marital affair and subsequently looked the other way when he learned of complaints about his faculty and staff's sexual misconduct. [Amended Complaint, p. 6, paragraph 27]

**Antoine's Response:** Antoine will not even answer this allegation as it is not relevant to this case. Even assuming that such information was true, consensual sex between two adults is not relevant to this case.

(9) **Spiller's Allegation:** As of October 13, 2006, Granger was still listed on the staff roster of Ozen High School and is still employed. [Amended Complaint, p. 7, paragraph 30]

**BISD's Response:** This is untrue as Granger was suspended on August 11, 2006 and his employment was terminated in December of 2006. *[See Exhibits D & E letters from Dr. Carrol Thomas to Granger]*

(10) **Spiller's Allegation:** BISD retaliated against Spiller by changing grades, and removing credits and not allowing her to graduate when she could have. [Amended Complaint, p. 7, paragraph 31]

**BISD's Response:** When Spiller returned from TYC, she wanted a high school diploma from Ozen High School. Beth Fischenich (Assistant Superintendent of Secondary Education) referred Spiller to Antoine as he was her principal of record before Spiller was sent to boot camp and TYC. (However, at that time Antoine was not the principal of Ozen High School) Antoine reviewed Spiller's transcripts from boot camp, TYC, and Ozen High School. There were some duplicate grades from TYC and boot camp, and Antoine was able to correct enough of her transcript to allow her enough credits to graduate. However, Spiller had never taken English IV and to graduate from high school, Spiller had to attend summer school to earn the English IV credit. *[Exhibit B, Affidavit of Antoine, paragraph 11]* Spiller has herself to blame for the confusion on her transcripts. But for Spiller's assault on an Ozen teacher, she would have attended the same school her full four years of high school. Attending boot camp for a semester and attending GED classes at TYC created confusion on her transcripts.

(11)   **Spiller's Allegation**:   Antoine even participated in a cover-up involving a subsequent disciplinary issue with Spiller in telling the students not to record what their teacher said about wanting to kill Spiller. [Amended Complaint, p. 7, paragraph 31]

**Antoine's Response:** Even if this were true, it is irrelevant to the case at hand. The subsequent disciplinary issue was Spiller's assault of a teacher. Tiffany Spiller was convicted of assault and sent to TYC. The assault happened on or about October 23, 2003. As Tiffany Spiller has admitted that the first time she told anyone about the Granger allegations was September 2004, it is hard to see that anything concerning the way the assault issue was handled could be considered retaliation. Antoine did not even know about Spiller's

20

allegations against Granger at the time of the teacher assault incident. *[Exhibit B, Affidavit of Antoine, paragraph 21].*

(12) **Spiller's Allegation:** BISD did not appropriately respond to specific complaints about Spiller. [Amended Complaint, p. 7, paragraph 33]

**BISD's Response:** Spiller admits that she did not tell any adults about the alleged Granger incident until September 2004. Former Assistant Superintendent of Secondary Education Beth Fischenich remembers Spiller's mother telling her about the alleged Granger incident. However, Fischenich is unable to remember when this conversation took place. The only other evidence that BISD has, that alleges there was a sexual assault of Spiller, is a letter dated August 24, 2005. *[Exhibit K, August 24, letter from Tammy Spiller to Anita Watson].* This is after Tiffany Spiller graduated from Ozen High School. Spiller has produced a summary prepared by her mother that was given to her attorney. In this summary, Spiller's mother says she spoke with Beth Fischenich on May 26, 2005 regarding Tiffany attending summer school at Ozen High School. Tammy Spiller alleges that she " expressed my grave concerns because Tommy Granger, the sexual assaulter is employed there and I did not want to wish for my daughter to set foot on that campus nor have any dealings or sightening [sic] of him. She [Fischenich] informed me that Tommy Granger would not be on the campus this summer and did not imply that an investigation would be completed regarding by [sic] report against Tommy Granger." *[Exhibit K, letter from Tammy Spiller to Peggy Bittick]* However, in order for a governmental entity or official to be held liable under section 1983, the discrimination in question must result from an official policy or custom. See *Jett v.*

*Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989); *Evans v. City of Houston*, 246 F.3d 344, 357-58 (5th Cir. 2001).

The above responses to Spiller's allegations shows that there is no credible evidence that there was a persistent, widespread practice of BISD officials or employees, which, although not authorized by officially adopted and promulgated policy, was so common and well settled as to constitute a custom that fairly represents municipal policy. Even if these allegations were true, Spiller cannot impute the actions of teachers, principals, and superintendents to the District for purposes of section 1983 liability. *See Brittany B. v. Martinez*, 494 F.Supp.2d 534, 541 (W.D. Tex. 2007).

**E.  Spiller's Section 1983 claim against Superintendent Carrol Thomas and former Ozen High School Principal Roland Antoine in their official capacities cannot be maintained.**

Suing a government official in his or her official capacity is another way of pleading against the entity of which the official is an agent. *Kentucky v. Graham*, 4713 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Brittany B. v. Martinez*, 494 F.Supp. 2d 534, 539 (W.D. Tex., 2007). In other words, an official capacity suit is to be treated as a suit against the entity. *Id.* "An official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 171, 105 S.Ct. 3099. Therefore, the Court should dismiss the claims against Superintendent Carrol Thomas and former Principal Roland Antoine in their official capacities because the section 1983 claims against them are redundant of the section 1983 claim against the District.

**F.  Title IX Standard**

Title IX provides in relevant part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity

receiving federal financial assistance. 20 U.S.C. Section 1681(a). As a recipient of federal funds, a school district may be liable for damages under Title IX. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998); *see Doe v. Lago Vista Indep. Sch. Dist.*, 106 F.3d 1223, 1225 (5th Cir. 1997). "[S]exual harassment of a student by a teacher constitutes actionable discrimination for the purposes of Title IX." *Franklin v. Gwinnett County Public Sch.*, 503 U.S. 60, 75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992); *see also Rosa H. v. San Elizario Indep. Sch. Distr.*, 106 F.3d 648, 653)(5th Cir. 1997)(holding that "minor students who have been subjected to sexual relationship with their teachers have a private cause of action for monetary damages" under Title IX).

A Title IX plaintiff cannot recover damages "against a school district for a teacher's sexual harassment of a student based on principles of respondeat superior or constructive notice." *Gebser*, 524 U.S. at 285; *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). To recover damages for a teacher's sexual harassment of a student requires a showing that: (1) a school district employee with supervisory power over the offending teacher; (2) had actual knowledge of the harassment; and (3) responded with deliberate indifference. *Gebser*, 524 U.S. at 290. "[T]o qualify as a supervisory employee whose knowledge of abusive conduct counts as the district's knowledge, a school official must at least serve in a position with the authority to 'repudiate that conduct and eliminate the hostile environment' on behalf of the school district." *Rosa H.*, 106 F.3d at 661 (quoting *Nash v. Electrospace System, Inc.*, 9 F.3d 401, 404 (5th Cir. 1993)). Notice of teacher-student harassment to employees who have no authority beyond reporting the misconduct to other school district employees is insufficient to expose a school district to Title IX liability. *Id.*

"[T]he plaintiff in a Title IX damages suit based on a teacher's behavior must prove actual knowledge of misconduct . . . and must also prove that the officials having that knowledge decided not to act on it." *Delgado v. Stegall*, 367 F.3d 668, 674 (7th Cir. 2001). The "actual knowledge" requirement is based on the subjective standard that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rosa H.*, 106 F.3d at 658 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). An official decision by the school district not to remedy the violation requires that the supervisory employee's response "amount to deliberate indifference to discrimination." *Gebser*, 524 U.S. at 290; *see also Davis v. Monore County Bd. of Educ.*, 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed. 2d 839 (1999)(defining Title IX deliberate indifference standard for student-to-student harassment as when the "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances"). School officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, even if the response is unsuccessful. *See Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000), cert. denied, 531 U.S 1073, 121 S.Ct. 766, 148 L.Ed. 2d 667 (2001). What constitutes appropriate remedial action for allegations of discrimination in Title IX cases depends on the particular facts of each case. *Id.*

1. **There is no evidence that BISD had actual notice of the alleged sexual abuse incident until Spiller was no longer a student.**

*Gebser* and its progeny require school districts to have actual knowledge of the specific sexual abuse before liability under Title IX will apply. There is no evidence in the record that the Superintendent Thomas or Principal Antoine had actual notice of the alleged sexual abuse incident. *[See Exhibit C, Affidavit of Dr. Carrol Thomas, and Exhibit B, Affidavit of Roland Antoine]*

24

Conversely, the undisputed evidence shows that Spiller kept the alleged sexual abuse incident a well guarded secret. *[See Exhibit A, Transcript of Spiller's Oral Deposition, p. 109]*. There is no evidence that BISD was aware of the alleged sexual abuse incident until Spiller's mother wrote a letter in August 2005. This was after Spiller had graduated from Ozen High School. Beth Fischenich did remember Spiller's mother telling her of the alleged incident. However, Fischenich does not remember when Spiller's mother told her. Assuming Spiller's mother's allegation that she told Fischenich in May 2005 and that Fischenich responded that Granger would not be at Ozen during the summer session, it could be said that Fischenich responded by making sure that Granger was not on the school campus during the Summer of 2005. *[Exhibit L, Letter from Tammy Spiller to Peggy Bittick]* This was a good faith response to Spiller's allegations. The deliberate indifference standard is a high one. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberated indifference and thus do not divest the official of qualified immunity. The 5th Circuit said, "We can foresee many good faith but ineffective responses that might satisfy a school official's obligation in these situations, e.g., warning the state actor, notifying the student's parents, or removing the student from class." *Doe on Behalf of Doe v. Dallas Independent School Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

## IV. CONCLUSION

For the reasons set forth above, Defendants Beaumont Independent School District, Dr. Carrol Thomas, in his individual capacity and representative capacity, and Roland Antoine, in his individual capacity and representative capacity, request that the Court grant this Motion for Summary Judgment, dismiss Plaintiff's claims with prejudice, and award them such other and further relief to which they may be justly entitled.

Respectfully submitted,

WELLS, PEYTON, GREENBERG &
     HUNT, LLP

By:   /s/ *Melody G. Chappell*
     Melody G. Chappell
     Attorney-in-Charge
     Texas Bar No. 00785096
     Nancy Y. Hart
     Texas Bar No. 24012795
     550 Fannin Street, Sixth Floor
     Beaumont, Texas 77701
     Telephone: (409) 838-2644
     Fax: (409) 838-4713

ATTORNEYS FOR DEFENDANTS
BEAUMONT INDEPENDENT SCHOOL
DISTRICT, DR. CARROL THOMAS, AND
ROLAND ANTOINE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the following counsel of record as follows:

*VIA E-FILE NOTIFICATION*
Ms. Peggy S. Bittick
One Themis Place
2400 South Texas Avenue
Pearland, Texas 77581
*Attorney for Plaintiff*

*VIA E-FILE NOTIFICATION*
Mr. Robert J. Hambright
Orgain, Bell & Tucker
P.O. Box 1751
Beaumont, Texas 77704
*Attorney for Defendant Tommy Floyd Granger*

DATED: October 15, 2008.

     /s/ *Melody G. Chappell*
     MELODY G. CHAPPELL